UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| PHILADELPHIA INDEMNITY INS. CO., as subrogee of ALMOST HOME DAY CARE, LLC,<br><br>Plaintiff,<br>v.<br><br>LENNOX INDUSTRIES, INC. and NIDEC MOTOR CORPORATION,<br><br>Defendants. | Civil Action No.<br>3:18-CV-00217 (CSH)<br><br>**March 18, 2019** |

## **RULING ON DEFENDANT NIDEC MOTOR CORPORATION'S MOTION TO DISMISS**

**HAIGHT, Senior District Judge:**

Plaintiff Philadelphia Indemnity Insurance Company ("PIIC" or "Plaintiff"), as subrogee of Almost Home Day Care, brought this product liability action against Defendants Lennox Industries, Inc. ("Lennox") and Nidec Motor Corporation ("Nidec") under the Connecticut Product Liability Act ("CPLA"), Conn. Gen. Stat. § 52-572m, *et seq*. Nidec now moves to dismiss the Second Count of the Third Amended Complaint for failure to state a claim upon which relief may be granted. For the reasons that follow, Nidec's Motion to Dismiss is granted. The Court also *sua sponte* dismisses Plaintiff's claims against Lennox, which rest on parallel allegations. Plaintiff will be given leave to replead all claims as specified below.

**I.**   **Facts Alleged**

The allegations set forth in the Third Amended Complaint (the "TAC"), taken as true for purposes of this motion, are summarized as follows.

1

On or about August 12, 2017, a fire broke out at a property in Ridgefield, Connecticut owned by Almost Home Day Care ("Almost Home"). [Doc. 40 ("Compl.") ¶ 14.] The fire caused substantial damage to Almost Home's property. [*Id.* ¶¶ 14, 21.]

Plaintiff alleges that the fire originated from a defective furnace designed, assembled, manufactured, sold, tested, distributed, and/or marketed by Defendant Lennox (the "subject furnace"), and a defective blower motor designed, assembled, manufactured, sold, tested, distributed, and/or marketed by Defendant Nidec (the "subject blower motor"). [*Id.* ¶¶ 14, 18, 20.] Prior to the fire, Almost Home used the subject furnace and blower motor (collectively, the "subject products") in an ordinary and foreseeable manner at its Ridgefield property. [*Id.* ¶ 15.] The subject furnace and motor blower were not modified, changed, altered, or abused by Almost Home or any other users. [*Id.* ¶ 19.]

Pursuant to a property insurance policy issued by PIIC to Almost Home, PIIC paid Almost Home for the property damage it incurred as a result of the fire. [*Id.* ¶¶ 2, 3.] On August 14, 2018, PIIC, as subrogor of Almost Home, filed its two-count Third Amended Complaint alleging that Defendants Lennox and Nidec violated the CPLA by manufacturing, designing, assembling, distributing and selling defective products, failing to provide adequate warnings or instructions on how to operate it, and breaching express and implied warranties. [*See* Doc. 40.] On September 10, 2018, Nidec filed a motion to dismiss the second count for failure to adequately plead a claim entitled to relief. [*See* Doc. 47.] In response, Plaintiff has both opposed Defendant's motion to dismiss on the merits and, in the alternative, requested leave to amend its complaint for a fourth time. [*See* Doc. 51 at 2.]

## II. Legal Standard for Dismissal

Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The "principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed factual allegations are not required, *Keller v. Harlequin Enterprises Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014), mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient, *Twombly*, 550 U.S. at 555. Plaintiff must, at a minimum, "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining whether a plaintiff has met this standard, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in the light most favorable to the nonmoving party. *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

## III. Discussion

All of Plaintiff's claims are governed by the CPLA, which provides the exclusive vehicle in this state for actions premised on "harm caused by a product." Conn. Gen. Stat. § 52–572n(a); *see also Winslow v. Lewis–Shepard, Inc.*, 212 Conn. 462, 471 (1989). While all products liability claims have thus been consolidated into "a single form of action," *LaMontagne v. E.I. Du Pont De Nemours & Co., Inc.*, 41 F.3d 846, 855 (2d Cir. 1994), the CPLA permits a plaintiff to assert various common law theories of liability thereunder, *Rosenthal v. Ford Motor Co., Inc.*,

462 F. Supp. 2d 296, 307 n. 11 (D. Conn. 2006). *See also* Conn. Gen. Stat. § 52–572m(b) ("'Product liability claim' shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent."). Importantly, however, the CPLA does not "alter the substance of a plaintiff's rights or the facts that a plaintiff must prove in order to prevail." *LaMontagne*, 41 F.3d at 855 (citations omitted). Consequently, any sub-claim brought under the CPLA (*e.g.*, negligence, strict liability, breach of warranty) must sufficiently allege all elements that would be required at common law. *See id.* at 856 (concluding that the district court "was correct to assess plaintiffs' theories of recovery in light of the Connecticut common-law requirements").

Plaintiff's Complaint presents a single CPLA cause of action against Nidec premised on four underlying theories of liability: (1) strict liability; (2) negligence; (3) breach of express warranty; and (4) breach of the implied warranties of merchantability and fitness for a particular purpose. [*See* Compl. ¶ 27.] While Plaintiff need not make a pretrial election between these theories, each theory must itself be sufficient to state a claim standing alone, and "[f]actual allegations [in support of each] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545; *see also Kwan v. Schlein*, 246 F.R.D. 447, 452 (S.D.N.Y. 2007).

In moving to dismiss the Third Amended Complaint pursuant to Rule 12(b)(6), Nidec argues that the Complaint consists primarily of impermissible legal conclusions, unsupported by factual assertions sufficient to support a product liability claim. [Doc. 47 at 3.] The Court agrees and, for the reasons discussed in Section III(E) *infra*, also dismisses all claims against Defendant

Lennox. However, Plaintiff will be granted leave to amend its complaint. *See Simmons*, 49 F.3d at 86-87 ([I]f the court dismisses the complaint for failure to comply with Rule 8, it should generally give the plaintiff leave to amend. This is especially true when the complaint states a claim that is on its face nonfrivolous."); *Michael Miller Fabrics, LLC v. Studio Imports Ltd., Inc.*, No. 12 CV 3858 KMW JLC, 2012 WL 4513546, at *2 (S.D.N.Y. Oct. 1, 2012) (granting defendant's motion to dismiss but permitting plaintiff to amend complaint with more specific factual allegations).

### A. Product Defect and Causation

Nidec argues that the Third Amended Complaint "fails to reveal any factual allegations to support its boilerplate allegations of a defect." [Doc. 47 at 5.] Specifically, Nidec contends that Plaintiff has failed to identify a specific defect attributable to the blower motor. [*Id.* at 6.] Plaintiff counters that at this early stage of litigation, the allegations and facts set forth in the Third Amended Complaint are sufficient under the liberal pleading requirements of the federal rules to provide Nidec "with more than enough notice of" the pertinent facts and claims. [Doc. 51-1 at 6-7.]

In any Connecticut products liability action, whether brought in strict liability or negligence, "the plaintiff must plead and prove that the product was defective and that the defect was the proximate cause of the plaintiff's injuries." *Haesche v. Kissner*, 229 Conn. 213, 218 (1994) (internal quotation marks and citation omitted); *see also Faux v. Thomas Indus., Inc.*, No. CV89–0233934S, 1992 WL 293230 (Conn. Super. Ct. Oct.8, 1992) ("[D]efectiveness is an essential element of a product liability action based on negligence as well as one based on strict tort liability."). A product defect is typically established through direct evidence of a specific

defect in the product's manufacturing, design, and/or warnings to buyers.[1]  *Vitanza v. Upjohn Co.*, 257 Conn. 365, 373 (2001); *see also Metro. Prop. & Cas. Ins. Co. v. Deere & Co.*, 302 Conn. 123 (Conn. 2011).  Alternatively, if direct evidence of a specific product defect is unavailable, a plaintiff may use what is known as the malfunction theory "to establish a prima facie product liability case on the basis of circumstantial evidence when direct evidence of a defect is unavailable."  *Metro. Prop.*, 302 Conn. at 134.  Under either approach, the TAC lacks sufficient factual content to raise the right to relief from speculative to plausible.  *See Twombly*, 550 U.S. at 557.

    1. <u>Specific Defect</u>

Plaintiff alleges all three types of defect: manufacturing defect, design defect, and failure to warn.  But the TAC offers nothing more than conclusory statements, devoid of any factual support, that these defects did in fact exist and were the proximate cause of Plaintiff's injuries.  With respect to Plaintiff's failure to warn claim, for example, Plaintiff offers only the conclusory assertion that Nidec "fail[ed] to provide adequate and sufficient warnings with respect to the subject motor blower which thereby rendered the subject blower motor defective and unreasonably dangerous." [Compl. ¶ 27(n).]  Absent even basic factual support for this claim—for example, whether the blower motor was accompanied with any warnings or instructions at all and, if so, what they stated and why they were inadequate—Plaintiff's claim is nothing more than a conclusory assertion that the Court must disregard.

---

[1] A manufacturing defect is a flaw in the manufacturing process which causes the product to deviate from the design standards and intended specifications. *Miller v. United Technologies Corp.*, 233 Conn. 732, 779 (1995).  A design defect, by contrast, exists where the design of the product renders it "unreasonably dangerous," as measured by whether the risk of danger inherent in the challenged design outweighs the benefits of that design (the "risk-utility test") or whether the product was "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it" (the "consumer expectation test"). *Bifolck v. Philip Morris*, 324 Conn. 362, 433–36 (2016).  Additionally, a failure to warn or adequately instruct of a product's "unreasonably dangerous propensities" may, by itself, constitute a defect. *Haesche*, 229 Conn. at 218.

Similarly, simply asserting in a conclusory fashion that the Defendants "designed, assembled, manufactured, sold, tested, distributed and/or marketed the subject [product] in a dangerous and defective condition" [Compl. ¶¶ 18, 20] fails to plausibly state a manufacturing defect or design defect claim. Even under the liberal pleading standards of Rule 8, a complaint generally must identify a ***specific problem*** with the design or manufacturing of the subject products. *See Karazin v. Wright Med. Tech., Inc.*, No. 3:17CV823 (JBA), 2018 WL 4398250, at *4 (D. Conn. Sept. 14, 2018), *reconsideration denied*, No. 3:17CV823 (JBA), 2018 WL 6067235 (D. Conn. Nov. 19, 2018). In *Karazin*, for example, this court recently held that plaintiffs' allegations that a medical device, Profemur Z, was "inherently unstable" due to the "modularity of the two piece neck and hip stem" could not suffice to render their design defect claim facially plausible. *Id.* The court found that the complaint relied primarily on "a series of legal conclusions as to the inadequacy of the Profemur Z's design" that "merely recited[d] legal components of the two design defect tests"—"precisely the type of assertions which the Supreme Court has deemed insufficient to state a claim and not entitled to the presumption of truth afforded by courts to the facts alleged in a complaint when considering a motion to dismiss." *Id*.

With respect to the blower motor, the Plaintiff here has alleged less than the plaintiff in *Karazin*: the TAC contains no facts indicating the specific component or mechanism that was defective, nor has it otherwise identified, even in abstract terms, a particular problem with the subject blower motor. "Pointing to the entirety of the device in question, without more, is not sufficient to state a claim of design defect." *Id*.

With respect to the furnace, although the TAC suggests that the blower motor was the defective component within the furnace, Plaintiff's allegations still fall short. As noted, based on the pleadings, the Court is unable to ascertain anything about the *nature* of the purported defect

in the blower motor—in what way, for example, the particular blower motor deviated from Nidec's manufacturing standards when compared to other blower motors (for purposes of a manufacturing defect claim), or how the design of the blower motor rendered it "unreasonably dangerous" (for purposes of a design defect claim). Plaintiff's understanding of the defect may evolve as discovery progresses, and the Court neither requires nor expects detailed factual allegations. But, at a minimum, Plaintiff must provide the basic "grounds for [its] entitlement to relief." *Twombly*, 550 U.S. at 555. It has not done so here.[2]

   2. Causation

Plaintiff's allegations with respect to causation fare no better under *Twombly* and *Iqbal*. Plaintiff's sole allegation with respect to causation is that "the fire originated within the subject furnace and blower motor." [Compl. ¶ 14]. Absent any supporting facts—and none are pleaded[3]—Plaintiff's assertion is merely a "conclusory allegation masquerading as" a factual conclusion. *Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) (noting that since defendant's "assertions lack any factual foundation, they are merely conclusory allegations

---

[2] Nor do the factual averments cited by Plaintiff alter this conclusion. Plaintiff argues that the following factual allegations set forth in the TAC exceed its pleading requirements: (i) where Nidec does business; (ii) Nidec's conduct in designing, assembling, manufacturing, selling, testing, distributing, and/or marketing blower motors for furnaces such as the subject blower motor at issue in this case; (iii) the model number of the Nidec blower motor located at the fire scene and "implicated in being a direct cause of the fire"; (iv) the fact that the subject furnace and blower motor were not abused or misused in any way leading up to the fire; and (v) that the Lennox Furnace and specifically Nidec's blower motor were involved in the cause of the fire. [Doc. 51-1 at 8.] As discussed, contrary to Plaintiff's representations, it has failed to plead any factual content regarding the manufacturing process, design process, or how the subject products are assembled, tested, distributed, or marketed. Nor, for the reasons discussed below, *see infra* Section III(A)(2), can Plaintiff's bald assertions that the subject products caused the fire be credited. The remaining factual allegations, even taken together in the light most favorable to the Plaintiff, do not raise the right to relief above the speculative level.

[3] Although Plaintiff argues in its opposition to Nidec's motion to dismiss that "the Third Amended Complaint alleges in specific detail the facts relating the fire event on August 12, 2017 and that the Lennox Furnace and specifically Nidec's blower motor were involved in the cause of the fire," [Doc. 51-1 at 8] the Court can identify no specific factual content that even suggests that the blower motor or furnace started the fire.

8

masquerading as factual conclusions, which are insufficient to defeat a motion to dismiss" (internal quotation marks and citation omitted)).

While the plausibility standard does not require detailed factual allegations, it does demand more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 668; *see also Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) (plausibility standard "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*" (internal quotation marks and citation omitted)). This modest but critical requirement ensures that Defendants are given fair notice as to the factual circumstances giving rise to Plaintiff's assertions and how to respond. *Littlejohn v. City of New York*, 795 F.3d 297, 309 (2d Cir. 2015). Plaintiff need not **prove** that the furnace or blower motor caused the fire at this stage, but the Court will not credit the bald assertion that they did so. *See, e.g.*, *Saienni v. Peters*, No. CIV.A. 14-505-JJB, 2015 WL 520765, at *2 (M.D. La. Feb. 9, 2015) (dismissing product liability claims where plaintiff relied on "conclusory statements" that "merely refer[ ] to the kitchen as the origin of the fire and call[ ] it the but-for and proximate cause of the fire."); *Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F. Supp. 3d 764, 775 (E.D. Ky. 2017) (dismissing complaint where plaintiffs alleged that defendants' product sparked a fire, "but they do not specify what defect, which product was defective, or how the defect sparked the fire"). *Cf. Iqbal*, 556 U.S. at 679 (instructing courts to disregard "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth").

3. <u>Malfunction Theory</u>

Although the TAC comes closer to satisfying the pleading standard under the malfunction theory, it still falls short.[4]

Based on the same principles underlying the doctrine of *res ipsa loquitur*, the malfunction theory allows a plaintiff to establish the existence of an unspecified product defect through circumstantial evidence when direct evidence of a specific defect is unavailable. *See Metro. Prop.*, 302 Conn. at 134; *White v. Mazda Motor of Am., Inc.*, 313 Conn. 610, 612 (2014). Specifically, a plaintiff must establish that "(1) the incident that caused the plaintiff's harm was of a kind that ordinarily does not occur in the absence of a product defect, and (2) any defect most likely existed at the time the product left the manufacturer's or seller's control and was not the result of other reasonably possible causes not attributable to the manufacturer or seller." *Metro. Prop.*, 302 Conn. at 139-40. These elements may be established through various forms of circumstantial evidence, "including evidence of (1) the history and use of the particular product, (2) the manner in which the product malfunctioned, (3) similar malfunctions in similar products that may negate the possibility of other causes, (4) the age of the product in relation to its life expectancy, and (5) the most likely causes of the malfunction." *Id.* at 140-41.

The Connecticut Supreme Court has also explicitly held that:

> To properly plead a product liability claim under the malfunction theory, the plaintiff [is] required to at least claim in the pleadings that some unspecified defect caused the plaintiff's harm and to allege facts tending to establish the malfunction theory's two basic elements, namely, 'that (1) the incident that caused the plaintiff's harm was of a kind that ordinarily does not occur in the absence of a product defect, and (2) any defect most likely existed at the time the product left the manufacturer's

---

[4] The TAC does not specifically mention the malfunction theory of liability. However, "[a] federal pleading is by statement of claim, not by legal theory." *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 600 (2d Cir. 1991); *see also* Fed. R. Civ. P. 8(a); *Gins v. Mauser Plumbing Supply Co.*, 148 F.2d 974, 976 (2d Cir. 1945) ("[P]articular legal theories of counsel yield to the court's duty to grant the relief to which the prevailing party is entitled, whether demanded or not."). The Court will therefore consider whether the Plaintiff has adequately pleaded this theory of liability.

10

or seller's control and was not the result of the reasonably possible causes not attributable to the manufacturer or seller.'

*White*, 313 Conn. at 623 (quoting *Metro. Prop.*, 302 Conn. at 139-40). While a plaintiff is not required to plead a separate malfunction theory count in his complaint, at a minimum it must plead allegations relevant to its elements that will fairly "put the defendants on notice that the plaintiff[ ] intend[s] to pursue an alternative theory of liability under the malfunction theory." *Id.* at 621.

Here, as a threshold matter, the Plaintiff would be required to plead that the subject furnace and subject blower motor were unavailable for inspection. *Decato v. Brandfon Motors, Inc.*, No. NNHCV116021419S, 2013 WL 4873069, at *7 (Conn. Super. Ct. Aug. 20, 2013) (holding that the malfunction theory is only available in cases where the subject or its components "were destroyed or are otherwise unavailable or inaccessible"); *White*, 313 Conn. at 623 (malfunction theory applicable where "a product malfunction causes the loss or destruction of the product, leaving the parties without direct evidence of the product's condition"). It does not do so here.

With respect to the substantive elements of the malfunction theory, Plaintiff has pleaded some facts that support application of the theory. Plaintiff's allegations that Almost Home used the subject products in an ordinary and foreseeable manner without modifying, altering, or abusing the products [Compl. ¶¶ 15, 17, 19], for example, support an inference that any defect most likely existed at the time the products left the Defendants' control. The Court may also take notice of "the common knowledge that [furnaces], in normal use, do not self-ignite." *See Merrimack Mut. Fire Ins. Co. v. Watkins Mfg. Co.*, No. 3:13CV123 JBA, 2015 WL 3397844, at *8 (D. Conn. May 26, 2015) (citation and internal quotation marks omitted). But these allegations, standing alone, are insufficient to nudge Plaintiff's claims "across the line from

conceivable to plausible." *Twombly*, 550 U.S. at 570. Consequently, if Plaintiff seeks to assert this theory in a new amended complaint, it is advised to include factual content that will allow the Court to plausibly infer that the fire originated in the subject products, and that other possible causes of the fire are absent. *See White*, 313 Conn. at 623.

      **B.**     **Negligence**

Even if Plaintiff had sufficiently pleaded the existence of a product defect that proximately caused the fire, Plaintiff's negligence claim suffers from two additional fatal deficiencies. Plaintiff sets forth a veritable laundry list of purported bases for its negligence claim, including: negligent failure to design, assemble, manufacture, sell, test, distribute, and/or market; negligent failure to properly inspect; negligent failure to warn; negligent failure to monitor or supervise employees in connection with the product; and negligent failure to test and/or inspect. [*See* Compl. ¶¶ 24, 27.] But, as pleaded, Plaintiff's negligence allegations are precisely the sort of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," that the Supreme Court has made clear cannot survive a motion to dismiss. *Iqbal*, 556 U.S at 678. To take one example, Plaintiff alleges that Defendants "fail[ed] to properly monitor the work of all agents and/or employees during the installation of the product to ensure compliance with applicable safety procedures." [Compl. ¶¶ 24(e), 27(e).] This allegation, however, lacks any specific facts that would support Plaintiff's purported right to relief—when the products were installed, which safety procedures the employees/agents installing the products were required to comply with, how the work was monitored during installation, and even whether the Defendants had any involvement in installation. Instead, the allegations are "in entirely generalized terms without any specification of any particular activities by any particular defendant[; they] are nothing more than a list of theoretical possibilities, which

12

one could postulate without knowing any facts whatever." *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50-51 (2d Cir. 2007) (quoting *In re Elevator Antitrust Litig.*, No. 04 Civ. 1178, 2006 WL 1470994, at *2-*3 (S.D.N.Y. May 30, 2006).

This Court confronted the same issue in *McConologue v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 93 (D. Conn. 2014). Plaintiff alleged that the defendant had acted negligently in violation of the CPLA in "(1) fail[ing] to properly and adequately test the [product] prior to marketing it, (2) design[ing] and pack[ing] the [product] in a defective manner, and (3) fail[ing] to perform a proper study to evaluate" the defective manufacturing processes used to make the product. *Id.* at 110. The court dismissed these claims under the CPLA for "fail[ing] the *Twombly* and *Iqbal* pleading standard." *Id.* Although the court credited plaintiff's factual allegation that the product "was defectively or negligently manufactured," it nonetheless held that, devoid of additional factual support, "the additional claims amount to nothing more than conclusory allegations and 'naked assertion[s] devoid of further factual enhancement.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). The parallel facts here compel the same conclusion: Plaintiff's negligence claims are nothing more than "naked assertion[s] devoid of further factual enhancement," and must be dismissed. *Id.*

Plaintiff also fails to plead any facts to plausibly suggest that the Defendants owed a duty of care to the Plaintiff. Under Connecticut law, the elements of a cause of action for negligence are duty, breach of that duty, causation, and actual injury. *Strum v. Harb Development, LLC*, 298 Conn. 124, 139-40 (2010); *Lamontagne v. E.I. Du Pont de Nemours & Co.*, 834 F. Supp. 576, 592 (D. Conn. 1993), *aff'd*, 41 F.3d 846 (2d Cir. 1994) ("[I]t is clear that the requirements of duty, causation and foreseeability applicable to ordinary negligence actions are also applicable to negligence claims against product manufacturers."). "'[T]he test for the existence of a legal

13

duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case.'" *Gomes v. Commercial Union Ins. Co.*, 258 Conn. 603, 615 (2001) (quoting *Lodge v. Arett Sales Corp.*, 246 Conn. 563, 572 (1998)). The existence of a "[d]uty is a legal conclusion about relationships between individuals, made after the fact, and is imperative to a negligence cause of action." *Mazurek v. Great Am. Ins. Co.*, 284 Conn. 16, 29 (2007).

As a threshold matter, Plaintiff offers no facts even explaining the relationship between Plaintiff and either Defendant. Did the furnace come with the property as a pre-installed fixture, or did Almost Home purchase it directly from Lennox? Was the blower motor installed as a component of the furnace by Lennox, or did Almost Home purchase it separately from Nidec? Without answers to even these basic questions, the Court cannot find that Plaintiff has stated a claim that is plausible on its face. *See Vendrella v. Astriab Family Ltd. P'ship*, 311 Conn. 301, 307 (2014) (whether legal duty exists depends on the specific facts and circumstances of the case at bar); *Gomes*, 258 Conn. at 615 ("The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual." (quoting *Lombard v. Edward J. Peters, Jr.*, P.C., 252 Conn. 623, 632–33 (2000))).

Additionally, the most that Plaintiff alleges is that the Defendants "knew or should have reasonably known that" the products "would subject Plaintiff to an unreasonable risk of harm" and "would endanger the real and personal property of Plaintiff." [Compl. ¶¶ 24(j), 24(k), 27(j), 27(k).] These are nothing more than conclusory assertions. There are, for example, no

14

allegations of prior incidents, safety records, or studies that would put the Defendants on actual or constructive notice of any defect in the product. The Defendants are therefore entitled to dismissal of Plaintiff's negligence claim, without prejudice to re-pleading.

### C. Breach of Implied Warranties

We turn next to Plaintiff's claim that the Defendants breached the implied warranties of merchantability and fitness for a particular purpose. To state a prima facie claim for breach of implied warranty plaintiff must show (1) existence of the warranty; (2) breach of the warranty; and, (3) damages proximately caused by the breach. *McConologue*, 8 F. Supp. 3d at 114.

The Connecticut Uniform Commercial Code ("CUCC") defines implied warranties in two provisions. CUCC § 42a-2-314[5] provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Conn. Gen. Stat. § 42a-2-314(1). Merchantable goods must be "fit for the ordinary purposes for which such goods are used" and must "conform to the promises or affirmations of fact made on the container or label." *Id.* § 42a-2-314(2). "In order to state a claim for breach of the implied warranty of merchantability, a party must plead that: (1) a merchant sold the goods; (2) the goods were defective and not merchantable at the time of sale; (3) injury occurred to the buyer or his property; (4) the injury was caused by the merchant's defective product; and (5) notice was given to the seller of the claimed breach." *Gallinari v. Kloth*, 148 F. Supp. 3d 202, 215 (D. Conn. 2015) (internal quotation marks and citation omitted).

In addition, Connecticut law establishes an implied warranty of fitness for a particular purpose. This warranty provides that goods shall be fit for a particular purpose for which the

---

[5] Courts have held that because the CPLA is silent as to the elements of a cause of action for breach of warranty, plaintiffs may rely on the Connecticut Uniform Commercial Code, Title 42a of the Connecticut General Statutes. *See McConologue.*, 8 F. Supp. 3d at 115.

goods are required if, at the time of contracting, the seller has reason to know of such purpose and of the buyer's reliance "on the seller's skill or judgment to select or furnish suitable goods." *Id.* § 42a–2–315. "To establish a cause of action for breach of the implied warranty of fitness for a particular purpose, a party must establish (1) that the seller had reason to know of the intended purpose and (2) that the buyer actually relied on the seller." *Gallinari*, 148 F. Supp. 3d at 215 (internal quotation marks and citation omitted).

Plaintiff's breach of implied warranty claim depends on the same core factual allegations as its strict liability and negligence claims: that the products at issue were sold with defects—defects that rendered them unfit for their ordinary and intended purposes—and caused the fire. But as the Court has already detailed in Part III (A), *supra*, Plaintiff fails to plausibly allege either an underlying defect in the products or any factual basis from which to infer causation. Accordingly, Plaintiff's brief of express warranty claim must be dismissed with permission to replead.

### D. Breach of Express Warranty

Like a claim for breach of implied warranty, a plaintiff asserting a claim for breach of express warranty must show (1) existence of the warranty; (2) breach of the warranty; and, (3) damages proximately caused by the breach. *McConologue*, 8 F. Supp. 3d at 114. Section 42a–2–313(1) of the CUCC specifies the ways in which an express warranty may be created:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description. (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Conn. Gen. Stat. § 42a-2-313(1). Although the seller need not use specific words or even intend to make such a warranty, "some statements of sellers are merely 'puffing' and do not create express warranties." *Web Press Servs. Corp. v. New London Motors, Inc.*, 203 Conn. 342, 351 (1987); *see* Conn. Gen. Stat. § 42a–2–313(2).

Plaintiff alleges only that Defendants "breach[ed] the express and implied warranties that the subject [product] would be free from defects, merchantable and safe to use for its general and intended purpose." [Compl. ¶¶ 24(i), 27(i).] Plaintiff does not, however, identify any specific warranty or representation made and allegedly breached by the Defendants, nor does it indicate the manner in which it was conveyed. Nor are there any factual allegations from which the court could reasonably infer these prerequisites of a breach of express warranty theory. Accordingly, Plaintiff's breach of express warranty claim must be dismissed. *See Simoneau v. Stryker Corp.*, No. 3:13–CV–1200 (JCH), 2014 WL 1289426, at *44-*45 (D. Conn. 2014) (dismissing plaintiff's breach of express warranty for failure to state a claim under Rule 12(b)(6), explaining that "[w]hile Simoneau need not prove the existence of the warranty at this stage, the Complaint must at least indicate the representation that the Stryker defendants are alleged to have made and breached"); *McConologue*, 8 F. Supp. 3d at 115 (dismissing express breach of warranty claim where complaint does not state the warranty that was allegedly made); *see also Gelber v. Stryker Corp.*, 788 F. Supp. 2d 145, 165-66 (S.D.N.Y. 2011) (dismissing express warranty allegations to the extent that the pleading did not specify "where these alleged representations appeared or to

17

whom they were made"); *Fisher v. APP Pharm., LLC*, 783 F. Supp. 2d 424, 431 (S.D.N.Y. 2011) (finding that the alleged representation that "the product was of merchantable quality and safe for the use for which it was intended" failed to allege the "specific words, promises or statements" constituting the warranty).

### E. *Sua Sponte* Dismissal of Claims Against Lennox

A district court may dismiss a complaint with respect to a non-moving defendant *sua sponte* where the issues are substantially the same as those deemed to warrant dismissal, and the plaintiff was given notice of the grounds for dismissal and an opportunity to be heard. *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n. 6 (2d Cir. 1990) ("*[S]ua sponte* dismissal of the complaint with respect to [non-moving defendant] is appropriate here, because the issues concerning [non-moving defendant] are substantially the same as those concerning the other defendants, and [plaintiff] had notice and a full opportunity to make out his claim."). Here, the factual allegations and claims against Lennox and Nidec are substantively identical save for the identity of the company and product at issue. Furthermore, and particularly in light of the parallel allegations against each Defendant, Nidec's motion to dismiss provides sufficient notice to Plaintiff of the grounds for dismissal, and Plaintiff was afforded an opportunity to be heard when it filed is opposition to that motion. *See, e.g.*, *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (affirming *sua sponte* dismissal for failure to state claim against a defendant who did not appear in the matter where other defendants filed a motion to dismiss and plaintiff responded thereto); *Alki Partners, L.P. v. Vatas Holding GMBH*, 769 F. Supp. 2d 478, 499 (S.D.N.Y. 2011) (dismissing, *sua sponte*, claims against a non-appearing, non-moving defendant where motions by other defendants put the plaintiff on notice of the ground for dismissal), *aff'd sub nom Alki Partners, L.P. v. Windhorst*, 472 Fed. App'x 7 (2d Cir. 2012) (summary order);

*Baird v. Perez*, No. 98 CIV. 3762 (SAS), 1999 WL 386746, at *5 (S.D.N.Y. June 10, 1999) ("*Sua sponte* dismissal of a defendant who has not joined in a motion to dismiss is appropriate where the issues concerning the defendant so dismissed are essentially the same as those concerning the other defendants against whom judgment of dismissal is proper."); *Jones v. U.S. Dep't of Hous. & Urban Dev.*, No. 11 CV 0846 RJD JMA, 2012 WL 1940845, at *2 (E.D.N.Y. May 29, 2012) ("*Sua sponte* dismissal is appropriate where, as here, plaintiffs claims against a non-appearing defendant, Allen Affordable, parallel those claims made against an appearing defendant, HPD."); *Rodriguez v. Mt. Vernon Hosp.*, No. 09 Civ. 5691 (GBD) (JLC), 2011 WL 3874814, at *2 (S.D.N.Y. Sept. 2, 2011) (dismissing claim *sua sponte* where claims against private defendant "ar[o]se out of the same conduct that underl[ay] [plaintiff's] claim against the State Defendants"). The Court therefore dismisses the TAC in its entirety and as to all Defendants without prejudice.

## IV. Conclusion

For the reasons set forth above, the Third Amended Complaint is dismissed as to all Defendants for failure to state a claim. The dismissal, however, is without prejudice to re-pleading to address the issues set forth in this opinion. Leave is granted to file a Fourth Amended Complaint, which must comply with Rule 11 of the Federal Rules of Civil Procedure, not later than April 15, 2019.

**It is SO ORDERED.**

Dated: New Haven, Connecticut
March 18, 2018

/s/ Charles S. Haight, Jr.
Charles S. Haight, Jr.
Senior United States District Judge