# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| PHILADELPHIA INDEMNITY INS. CO., as subrogee of ALMOST HOME DAY CARE, LLC,<br><br>                  Plaintiff,<br>  v.<br><br>LENNOX INDUSTRIES, INC. and NIDEC MOTOR CORPORATION,<br><br>                  Defendants. | Civil Action No.<br>3:18-cv-00217 (CSH)<br><br>**February 12, 2020** |

## RULING ON DEFENDANTS' MOTIONS TO DISMISS THE FOURTH AMENDED COMPLAINT

**HAIGHT, Senior District Judge:**

Plaintiff Philadelphia Indemnity Insurance Company ("PIIC" or "Plaintiff"), as subrogee of Almost Home Day Care LLC ("Almost Home"), brings this product liability action against Defendants Lennox Industries, Inc. ("Lennox") and Nidec Motor Corporation ("Nidec") under the Connecticut Product Liability Act ("CPLA"), Conn. Gen. Stat. § 52-572m, *et seq*.

The case has a procedural history. A time came when Defendants moved to dismiss Plaintiff's Third Amended Complaint for failure to state a claim upon which relief may be granted. In an opinion reported at 2019 WL 1258918 (the "March 18, 2019 Ruling"), familiarity with which is assumed, the Court granted Nidec's motion to dismiss and *sua sponte* dismissed Plaintiff's claims against Lennox, but granted Plaintiff leave to file an amended complaint.

Pursuant to that leave, Plaintiff has now filed a Fourth Amended Complaint.  *See* Doc. 68.

Both Nidec and Lennox have moved to dismiss the Fourth Amended Complaint for failure to state

a claim.  *See* Docs. 69, 71.  Plaintiff requests that Defendants' motions be denied or, alternatively,

that Plaintiff be granted leave to amend its complaint yet again.  *See* Doc. 75, at 12.  The instant

ruling resolves these motions.

## I.  THE FOURTH AMENDED COMPLAINT

The allegations set forth in the Fourth Amended Complaint, taken as true for the purposes

of this motion, are summarized as follows.

Defendant Lennox is in the business of designing, assembling, manufacturing, testing,

selling, distributing, and marketing furnaces.  *See* Doc. 68 ("Compl.") ¶ 5.  Defendant Nidec, via

its acquisition of Emerson Electric Co, is in the business of designing, assembling,

manufacturing, testing, selling, distributing, and marketing blower motors for furnaces.  *Id.* ¶ 7.

Plaintiff PIIC provides insurance coverage to Almost Home in connection with its real

property located in Ridgefield, Connecticut.  *Id.* ¶ 2.  Almost Home purchased the property in

2014 with certain pre-installed fixtures, including a furnace manufactured by Lennox,[1] which

incorporated a blower motor manufactured by Nidec.[2]  *Id.* ¶ 14.  At all relevant times, Almost

Home used, operated and maintained the Lennox furnace and the incorporated Nidec blower

motor in an ordinary and foreseeable manner, unaware of any defects.  *Id.* ¶ 14.

On August 12, 2017, a fire originated within the Lennox furnace and the Nidec blower

motor installed at Almost Home's property.  *Id.* ¶ 15.  The fire spread throughout the property

---

[1]Lennox Elite Series Model Number G51MP-60C-090-03 with Serial Number 5904J21447.  *Id.* ¶ 11.

[2] Emerson Model Number K55HXHPK-8801.  *Id.* ¶ 12.

causing substantial damage to Almost Home. *Id.* ¶¶ 15, 17. Pursuant to the insurance policy, PIIC paid Almost Home for damages incurred as a result of the August 12, 2017 fire and, thus, became subrogated to the recovery rights and claims of Almost Home in connection with this incident. *Id.* ¶ 3.

PIIC alleges that, "[b]ased on an extensive pre-suit investigation, including the retention of multiple forensic fire/engineering experts who conducted both on-scene and laboratory examinations of the subject evidence, it has been determined that subject fire was caused by [Defendants'] defective manufacture and/or design of the furnace and blower motor." *Id.* ¶ 16. Specifically, because of Lennox's and Nidec's defective manufacture and design, the furnace and the blower motor were unable "to compensate for foreseeable and anticipated restrictions of airflow, resulting in (1) overheating, arcing and failure of the furnace blower motor's internal windings; and/or (2) overheating, arcing and failure of the furnace blower motor's internal windings due to repeated cycling and failure of the furnace blower motor's thermal cut off (TCO) switch." *Id.*

PIIC further states that Lennox and Nidec failed to warn consumers, including Almost Home, "of the furnace and blower motor's unreasonably dangerous propensities." *Id.* Namely, Lennox and Nidec failed to warn Almost Home "that during foreseeable and usual anticipated use of [the Lennox furnace and the Nidec blower motor], restricted airflow in conjunction with the failure of the furnace blower motor's electrical windings and/or TCO failure could result in overheating of the subject blower motor that [would] lead[] to internal arcing capable of catastrophic failure resulting in fire and property damage." *Id.*

At all relevant times, Almost Home did not modify, change, alter, or abuse the furnace or the blower motor installed at the property. *Id.* ¶¶ 18, 20. Rather, Defendants designed, assembled, manufactured, sold, tested, distributed, and/or marketed the furnace and the blower motor in a dangerous and defective manner, thus causing the August 12, 2017 fire. *Id.* ¶¶ 19, 21, 23. PIIC, on behalf of Almost Home, gave notice to Lennox and Nidec that their products were defective and non-merchantable and caused the August 12, 2017 fire. *Id.* ¶ 13.

PIIC alleges that the damages sustained during the August 12, 2017 fire were the direct and proximate result of the strict liability violations, negligence, and breach of warranty of Lennox and Nidec as manufacturers and distributors of the furnace and the blower motor installed at Almost Home's property. *Id.* ¶¶ 25, 28.

## II. DISCUSSION

### A.    12(b)(6) Motion to Dismiss Standard

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to do so may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

However, dismissal should be granted "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 99 (2d Cir. 2001) (internal citations and quotations omitted). "It is important to remember that the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 171 (D. Conn. 2002) (citing *County of Suffolk v. First Am. Real Estate Sols.*, 261 F.3d 179 (2d Cir. 2001) (internal quotations omitted).

4

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true," stating a claim "that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable" for the alleged misconduct. *See id.* (citing *Twombly*, 550 U.S. at 556). Although detailed factual allegations are not required, the factual content pleaded "must be enough to raise a right to relief above the speculative level." *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citing *Twombly*, 550 U.S. at 555).

In determining whether a plaintiff has met this standard, the Court "must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." *Robinson v. City of New Haven*, 578 F. Supp. 2d 385, 389 (D. Conn. 2008) (citing *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996)); *see In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). The Court, however, is not bound to accept as true the complaint's legal conclusions. *See Iqbal*, 556 U.S. at 678. Indeed, a complaint containing mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not survive a motion to dismiss. *See Arista Records*, 604 F.3d at 121 (citing *Twombly*, 550 U.S. at 555); *Keller v. Harlequin Enterprises Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014).

### B.    Applicable Substantive Law

The CPLA is the "exclusive remedy" for products liability claims under Connecticut law. *See Liberty Mut. Ins. Co. v. Howmet Casting & Servs., Inc.*, No. 3:15-cv-01408 (VAB), 2016 WL 5661999, at *2 (D. Conn. Sept. 29, 2016) (citing *Fraser v. Wyeth, Inc.*, 857 F. Supp. 2d 244, 252

(D. Conn. 2012)). However, the CPLA does not preempt common law grounds for relief in a products liability suit. *See Walters v. Howmedica Osteonics Corp.*, 676 F. Supp. 2d 44, 48 (D. Conn. 2009). Rather, the CPLA merges the various theories of liability—including strict liability, negligence, and breach of express or implied warranty—into one cause of action. *See* Conn. Gen. Stat. § 52–572m(b); *Wilson*, 198 F. Supp. 2d at 171; *see also Walters*, 676 F. Supp. 2d at 48 ("while [the plaintiff] brings one cause of action under the CPLA, that single cause of action includes the different grounds for relief"). Consequently, any sub-claim brought under the CPLA, such as negligence, strict liability, or breach of warranty, must sufficiently allege all elements that would be required at common law. *See LaMontagne v. E.I. Du Pont De Nemours & Co., Inc.*, 41 F.3d 846, 855–56 (2d Cir. 1994) (noting that the CPLA does not "alter the substance of a plaintiff's rights or the facts that a plaintiff must prove in order to prevail.").

The Fourth Amended Complaint asserts CPLA claims against Lennox and Nidec on the theories of negligence, breach of warranty, and strict liability. Compl. ¶¶ 25, 28. The Court will now consider whether PIIC has stated viable CPLA claims under any of these theories of recovery.

### 1. Strict Liability

To state a claim based on strict liability, a plaintiff must plausibly allege that the product designed, manufactured or sold by the defendant was defective and that the defect proximately caused the plaintiff's injuries.[3] *See Walters*, 676 F. Supp. 2d at 49; *Metro. Prop. & Cas. Ins. Co. v.*

---

[3] Additionally, a plaintiff must prove that the product defect existed at the time of the sale of the product, and that the product reached the plaintiff without substantial change in condition. *See McConologue*, 8 F. Supp. 3d at 99 (citing *Metro. Prop. & Cas. Ins.*, 302 Conn. at 131). Here, PIIC sufficiently alleges that Defendants designed, assembled, manufactured, and sold the furnace and the blower motor installed at Almost Home's property in a defective condition, and that, at all relevant times, Almost Home did not modify, change, alter, or abuse the furnace or the blower motor. Compl. ¶¶ 18–23.

*Deere & Co.*, 302 Conn. 123, 131 (2011). "A product may be defective due to a flaw in the manufacturing process, a design defect or because of inadequate warnings or instructions." *See McConologue v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 93, 99 (D. Conn. 2014) (citing *Breen v. Synthes–Stratec, Inc.*, 108 Conn. App. 105, 110 (2008)).

### a.    Design Defect

A design defect exists where the design of the product renders it "unreasonably dangerous." *See McConologue*, 8 F. Supp. 3d at 109 (citing *Potter v. Chicago Pneumatic Tool Co.*, 241 Conn. 199, 214–15 (1997)). For a defective product to be unreasonably dangerous, it "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it." *Id.*

Unlike the Third Amended Complaint, which failed to plead any factual content identifying a "specific problem" with the design of the Lennox furnace or the Nidec blower motor,[4] the Fourth Amended Complaint contains allegations that allow the Court to draw a reasonable inference that Defendants' products were defective in their design. Specifically, PIIC contends that the design of the Lennox furnace and the Nidec blower motor was defective because of "their *collective* inability to compensate for foreseeable and anticipated restrictions of airflow, resulting in (1) overheating, arcing and failure of the furnace blower motor's internal windings; and/or (2) overheating, arcing and failure of the furnace blower motor's internal windings due to repeated cycling and failure of the furnace blower motor's thermal cut off (TCO) switch." Compl. ¶ 16 (emphasis added). These allegations link the specific components and mechanisms of Defendants' products to a clearly defined problem that rendered their design

_____

[4] *See* March 18, 2019 Ruling, 2019 WL 1258918 , at **4–5.

defective—namely, the inability of either the furnace or the blower motor to prevent the overheating of the motor's internal windings and the failure of its thermal cut off switch.

Lennox argues that the design defect identified by PIIC—which Lennox reduces to the overheating and failure of the blower motor and its thermal cut off switch—relates only to the blower motor and cannot be attributable to the Lennox furnace.[5] The Court disagrees. PIIC's allegations, when viewed in the light most favorable to Plaintiff, plausibly assert that Lennox's design rendered the furnace unreasonably dangerous due to its inability to prevent overheating. Lennox's attempt to classify the defect identified by PIIC as an issue outside of Lennox's purview does not address PIIC's allegation that the design of the furnace was defective in its inability "to compensate for foreseeable and anticipated restrictions of airflow," resulting in overheating and failure of the blower motor's internal windings and its thermal cut off switch. Compl. ¶ 16. Indeed, PIIC specifically alleges that Lennox "fail[ed] to manufacture, assemble and/or design the subject furnace in a manner sufficient to prevent overheating and fire." *Id.* ¶ 25(a)(r). While Lennox was not responsible for and had no involvement in the design, manufacture, assembly, testing, or sale of the blower motor,[6] Lennox still had a duty to design its furnace in a manner that would account for any "foreseeable and anticipated restrictions of airflow" that might negatively impact the operation of the furnace or any of its parts, including the blower motor. Lennox's failure to do so, if accepted as true, would render the furnace dangerous to an extent beyond that which would be contemplated by an ordinary consumer and, thus, defective in its design.

---

[5] *See* Doc. 71-1, at 5.

[6] *See id.*

Additionally, PIIC asserts that, "[b]ased on an extensive pre-suit investigation, including the retention of multiple forensic fire/engineering experts," the August 12, 2017 fire originated in the furnace and the blower motor, both of which were prone to overheating due to their defective designs. Compl. ¶¶ 15–16. PIIC thus plausibly alleges that the August 12, 2017 fire on Almost Home's property was proximately caused by the defective condition of Defendants' products. Accordingly, PIIC's design defect claims against Lennox and Nidec survive Defendants' motions to dismiss.

### b. *Manufacturing Defect*

A manufacturing defect is "a flaw in the manufacturing process which causes the product to deviate from the design standards and intended specifications." *McConologue*, 8 F. Supp. 3d at 109 (citing *Miller v. United Technologies Corp.*, 233 Conn. 732, 779 (1995)). A manufacturing defect exists if the product "deviate[s] from Defendant's intended design and specifications in some way." *See Karazin v. Wright Med. Tech., Inc.*, No. 3:17-cv-823 (JBA), 2018 WL 4398250, at *3 (D. Conn. Sept. 14, 2018). Additionally, a manufacturing defect may exist if the product deviates from the applicable federal or industry standards. *See McConologue*, 8 F. Supp. 3d at 105 (finding that the plaintiff plausibly stated a manufacturing defect claim, in part, because the plaintiff asserted that similar products manufactured by the defendant as part of the same batch "were being recalled for their failure to comply with the FDA's specifications").

Defendants argue that PIIC has once again failed to plead any facts identifying "a specific problem" with the manufacturing of the furnace or the blower motor installed at Almost Home's property. Specifically, Defendants note that PIIC does not allege that either Lennox or Nidec "used the wrong materials or wrong dimensions in the manufacturing process," or otherwise

deviated from any particular manufacturing standards or design specifications.[7]

The Court disagrees. While PIIC's complaint would certainly benefit from inclusion of additional details regarding Defendants' manufacturing specifications or the industry's standards or regulations, PIIC is not required to plead "detailed or elaborate factual allegations" to survive a motion to dismiss—rather, PIIC must simply allege facts "which, if true, could support [its] claim that [Lennox and Nidec] deviated from manufacturing specifications." *See Karazin*, 2018 WL 4398250, at *3. For example, in *Karazin*, the court concluded that the plaintiff's allegation that the product's "size tolerances were out of specification" plausibly stated a manufacturing defect claim, despite its failure to "identify the manufacturing specifications at issue" or plead facts "explaining how the 'size tolerances' were noncompliant." *See id.* The court reasoned that, because the plaintiffs pled some factual content showing that the product was defective and there was no established "pleadings floor" or "minimum factual allegations necessary to state a claim," "[t]he additional facts Defendant request[ed] [were] the detailed or elaborate factual allegations which *Twombly* and *Iqbal* [did] not require." *See id.* (internal quotations omitted). The court further noted that the facts that the defendant "identifie[d] as fatally omitted [were] precisely the type of facts which [were] largely within Defendant's control prior to the initiation of discovery" and, therefore, could not have been included in the complaint. *See id.* For these reasons, the court declined to dismiss the plaintiff's manufacturing defect claim. *Id.*

In the instant case, PIIC alleges that, "[b]ased on an extensive pre-suit investigation, including the retention of multiple forensic fire/engineering experts who conducted both on-scene and laboratory examinations of the subject evidence, it has been determined that subject

---

[7] *See* Doc. 71-1, at 5–6; Doc. 70, at 6.

10

fire was caused by [Defendants'] defective manufacture and/ or design of the furnace and blower motor." Compl. ¶ 16. PIIC alleges that the furnace and the blower motor were defective in their manufacture because they were unable to "compensate for foreseeable and anticipated restrictions of airflow" and prevent "overheating, arcing and failure of the furnace blower motor's internal windings." *See id.* ¶ 16. Additionally, PIIC alleges that the defective condition of Defendants' products was a result of "failing to comply with all local, state and federal codes, regulations, ordinances, standards, recommendations and/or requirements." *See id.* ¶¶ 25(s), 28(s). Although these allegations, similar to the ones made by the plaintiff in *Karazin*, might not identify the specific manufacturing specifications that were disregarded by Defendants, they are, nevertheless, sufficient to establish that Defendants' products suffered from a manufacturing defect—especially at this stage of the litigation when discovery is still in progress and much of the relevant information is within Defendants' control. *See Karazin*, 2018 WL 4398250, at *3; *see also Wilson*, 198 F. Supp. 2d at 171 (stating that, on motion to dismiss, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"); *Simoneau v. Stryker Corp.*, No. 3:13–cv–1200 (JCH), 2014 WL 1289426, at *6 (D. Conn. Mar. 31, 2014) ("While [the plaintiff's] Complaint doubtless would benefit from the type of specificity suggested by the Stryker defendants, the court rejects the need for medical device-related CPLA claims to be pled with that level of detail in order to defeat a Rule 12(b)(6) motion.").

Additionally, by asserting that the fire originated in the furnace and the blower motor, both of which were prone to overheating due to their defective manufacture, PIIC plausibly alleges that the August 12, 2017 fire on Almost Home's property was proximately caused by the

defective condition of Defendants' products.  Drawing all reasonable inferences in Plaintiff's favor, these allegations together plausibly state a manufacturing defect claim against both Lennox and Nidec and are sufficient to survive a motion to dismiss.[8]

### c.     Failure to Warn

A product may also be defective "in that adequate warnings or instructions were not provided."  *See Simoneau*, 2014 WL 1289426, at *9 (citing Conn. Gen.Stat. § 52–572q(a)).  To plausibly state a failure to warn claim, a plaintiff must establish that, had such warnings been provided, the injury would not have occurred.  *See McConologue*, 8 F. Supp. 3d at 100 (citing Conn. Gen.Stat. § 52–572q(c)); *Karazin*, 2018 WL 4398250, at *5.  However, a plaintiff is not required to plead "detailed factual allegations regarding exactly what instructions should have been provided," as that information might not have been available to the plaintiff "prior to discovery."  *See Karazin*, 2018 WL 4398250, at *5.

Here, the Fourth Amended Complaint alleges that "the fire was caused by Lennox/ Nidec's failure to warn users/consumers, including Almost Home, of the furnace and blower motor's unreasonably dangerous propensities—namely that during foreseeable and usual anticipated use of the product, restricted airflow in conjunction with the failure of the furnace

---

[8] Because PIIC has plausibly alleged that the furnace and the blower motor suffered from specifically identified defects that caused the August 12, 2017 fire, the Court need not consider the application of the "malfunction theory," which "allows a plaintiff to establish the existence of an unspecified product defect through circumstantial evidence when direct evidence of a specific defect is unavailable."  *See* 2019 WL 1258918 , at *5–6 (considering whether PIIC, who failed to identify any specific product defect as the cause of the August 12, 2017 fire, stated a strict liability claim under the malfunction theory). However, even if the Court had considered the malfunction theory, it would find it inapplicable in light of PIIC's amended allegations.  As a threshold matter, a plaintiff relying on the malfunction theory must plead that the subject products were unavailable for inspection.  *See* 2019 WL 1258918 , at *6 (citing, *inter alia*, *Decato v. Brandfon Motors, Inc.*, No. NNH-cv-116021419S, 2013 WL 4873069, at *7 (Conn. Super. Ct. Aug. 20, 2013)).  However, the Fourth Amended Complaint expressly alleges that PIIC retained "multiple forensic fire/engineering experts who conducted both on-scene and laboratory examinations of the subject evidence," thus making the malfunction theory inapplicable.  Compl. ¶ 16.

blower motor's electrical windings and/or TCO failure could result in overheating of the subject blower motor that [may] lead[] to internal arcing capable of catastrophic failure resulting in fire and property damage." Compl. ¶ 16. These allegations, unlike the "conclusory assertion" of the Third Amended Complaint which stated merely that Defendants "fail[ed] to provide adequate and sufficient warnings with respect to the subject motor blower,"[9] contain sufficient factual content to survive Defendants' motions to dismiss. Because "detailed factual allegations regarding exactly what instructions should have been provided" are not required to plausibly state a failure to warn claim, the allegations of the Fourth Amended Complaint are sufficient to survive Lennox's and Nidec's motions to dismiss. *See Karazin*, 2018 WL 4398250, at *5

### 2. Negligence

Under Connecticut law, the elements of a cause of action for negligence are duty, breach of that duty, causation, and actual injury. *Strum v. Harb Development, LLC*, 298 Conn. 124, 139-40 (2010); *Lamontagne v. E.I. Du Pont de Nemours & Co.*, 834 F. Supp. 576, 592 (D. Conn. 1993), *aff'd*, 41 F.3d 846 (2d Cir. 1994) (stating that the requirements applicable to ordinary negligence actions "are also applicable to negligence claims against product manufacturers" under the CPLA).

The test for whether a defendant owed a duty to the plaintiff entails: "(1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences

---

[9] *See* March 18, 2019 Ruling, 2019 WL 1258918 , at *6.

or particular plaintiff in the case.'" *Gomes v. Commercial Union Ins. Co.*, 258 Conn. 603, 615 (2001) (quoting *Lodge v. Arett Sales Corp.*, 246 Conn. 563, 572 (1998)). Breach of that duty occurs when a defendant fails to exercise reasonable care. *See Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 82 (S.D.N.Y. 2001); *Mazurek v. Great Am. Ins. Co.*, 284 Conn. 16, 29 (2007).

Similar to the Third Amended Complaint, the Fourth Amended Complaint does not plead any specific factual content that would support a reasonable inference of Defendants' negligence but merely recites a "laundry list of purported bases for its negligence claim,"[10] including Defendants' alleged failure to properly design, manufacture, inspect, give adequate warnings, or supervise employees in connection with the products. *See* Compl. ¶¶ 25(a), 28(a). However, PIIC pleads no concrete factual allegations to support these legal conclusions.

As a threshold matter, PIIC does not in any way plead that Defendants owed a duty of care to Almost Home. PIIC only alleges that Almost Home did not purchase the furnace or the blower motor directly from Defendants but, rather, acquired its real property with the furnace and the blower motor already pre-installed as fixtures. *See id.* ¶ 14. Even if the Court were to draw an inference favorable to PIIC that Defendants, as manufacturers and sellers of the furnace and the blower motor, owed a duty of reasonable care to all foreseeable consumers of their products and Almost Home was such a consumer, PIIC has pled no facts suggesting that Defendants breached that duty. While PIIC has plausibly alleged that the subject furnace and the blower motor were defective due to their inability to "compensate for foreseeable and anticipated restrictions of airflow," PIIC has offered no factual support for an inference that the defective

---

[10] *See* March 18, 2019 Ruling, 2019 WL 1258918, at *6.

condition of these products was caused by Defendants' acts or omissions. *See id.* ¶ 16. Unlike strict liability, which "focuses on the product itself" and finds the manufacturer liable if the product is defective, negligence centers on the manufacturer's conduct. *See Moss v. Wyeth Inc.*, 872 F. Supp. 2d 162, 173 (D. Conn. 2012). Here, although PIIC has successfully stated a strict liability claim based on defective design and manufacturing, PIIC has failed to show that the alleged defects were caused by Lennox's or Nidec's negligent conduct. *See Karazin*, 2018 WL 4398250, at *7 (finding that the plaintiff failed to state a negligence claim, despite successfully stating a claim for a manufacturing defect, because the plaintiff's allegations "include[d] no factual support for an inference that negligence caused that manufacturing defect").

For example, while PIIC asserts that the subject furnace and the blower motor were prone to failure and overheating because of their inability to "compensate for foreseeable and anticipated restrictions of airflow," PIIC does not allege that Defendants knew or should have known that the products at issue suffered from such shortcomings or that Defendants failed to take reasonable precautions to prevent the furnace or the blower motor from overheating.[11] Nor does PIIC allege that Defendants were negligent in their failure to consider a viable alternative design for the furnace or the blower motor that would account for restrictions of airflow and potential overheating. Similarly, although PIIC links the shortcomings of the furnace and the blower motor to defective manufacturing, PIIC does not allege that the manufacturing defects were caused by Defendants' failure to exercise reasonable care in their manufacturing or

---

[11] As Lennox rightly notes in its brief, PIIC's allegations that the restrictions of airflow were "foreseeable and anticipated" are conclusory because they are not supported by any specific facts, such as that Defendants were aware of "prior complaints or claims" that would have put Defendants on notice of the alleged risks. *See* Doc. 71-1, at 7.

assembly process.  Mere references to a "negligence producing conduct of Defendants"[12] unsupported by specific allegations cannot raise PIIC's right to relief "above the speculative level."  *See Arista Records*, 604 F.3d at 120 (citing *Twombly*, 550 U.S. at 555); *accord McConologue*, 8 F. Supp. 3d at 110 (dismissing the allegations that the product was "negligently manufactured" and that the defendants "fail[ed] to properly and adequately test [the product] prior to marketing it" as amounting to "nothing more than conclusory allegations and naked assertion[s] devoid of further factual enhancement") (internal quotations omitted).  Consequently, in the absence of any specific factual allegations as to the nature of Defendants' breach of their duty of care, PIIC has once again failed to state a negligence claim against either Lennox or Nidec.  PIIC's negligence claims are thus dismissed.

### 3.    Breach of Warranty

#### a.    Express

A plaintiff asserting a claim for breach of express warranty must show (1) existence of the warranty; (2) breach of the warranty; and, (3) damages proximately caused by the breach.  *See McConologue*, 8 F. Supp. 3d at 114 (citing *Motley v. Jaguar Land Rover N. Am., LLC*, X03-cv-084057552S, 2012 WL 5860477 (Conn. Super. Ct. Nov. 1, 2012)).  An express warranty is created when, among other things, the seller makes "[a]ny affirmation of fact or promise" to the buyer "which relates to the goods and becomes part of the basis of the bargain."  *See* Conn. Gen.Stat. § 42a–2–313; *Fraser v. Wyeth, Inc.*, 857 F. Supp. 2d 244, 257 (D. Conn. 2012).  Additionally, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."  *See* Conn. Gen.Stat.

---

[12] Compl. ¶ 23.

§ 42a–2–313; *Fraser*, 857 F. Supp. 2d at 257.

To state a viable claim for breach of express warranty, a plaintiff "must at least *indicate* the representation that the [] defendants are alleged to have made and breached." *See Simoneau*, 2014 WL 1289426, at *14 (emphasis in the original). "[A] breach of express warranty claim without any reference to the underlying representation lacks plausibility." *Id.*; *see also Gelber v. Stryker Corp.*, 788 F. Supp. 2d 145, 165–66 (S.D.N.Y. 2011) (concluding that the plaintiffs did not plausibly state a breach of express warranty claim as to the allegations that failed to specify "where [the] alleged representations appeared or to whom they were made").

In the instant case, PIIC has once again failed to state a claim for breach of express warranty because it has pled no factual content identifying any representation, affirmation of fact, promise, or statement made and breached by Defendants. *See, e.g.*, *Simoneau*, 2014 WL 1289426, at **14–15 (concluding that the plaintiff failed to state a claim for breach of express warranty, because the complaint failed to "indicate the representation that the Stryker defendants [were] alleged to have made and breached"). Similar to the now-dismissed Third Amended Complaint, the Fourth Amended Complaint alleges only that Defendants "breach[ed] the express and/or implied warranties that the subject [furnace and blower motor] would be free from defects, merchantable and safe to use for [their] general and intended purposes." Compl. ¶¶ 25(i), 28(i). As stated in the March 18, 2019 Ruling, such conclusory allegations, without any reference to the specific representations made and breached by Defendants, do not allow the Court to reasonably infer that PIIC has met the prerequisites of a breach of express warranty theory. *See* 2019 WL 1258918, at *9 (citing *Simoneau*, 2014 WL 1289426, at **14–15); *accord McConologue*, 8 F. Supp. 3d at 115 (concluding that the plaintiff failed to state a claim for

breach of express warranty, because "there [were] no allegations in the complaint that demonstrate[d] the existence of an express warranty" that the defendants allegedly made). Accordingly, PIIC's breach of express warranty claims against Lennox and Nidec are dismissed.

### b.    *Implied*

To state a claim for breach of implied warranty, plaintiff must show (1) existence of the warranty; (2) breach of the warranty; and, (3) damages proximately caused by the breach. *McConologue*, 8 F. Supp. 3d at 114 (citing *Motley v. Jaguar Land Rover N. Am., LLC*, X03-cv-084057552S, 2012 WL 5860477 (Conn. Super. Ct. Nov. 1, 2012)).  Connecticut law recognizes actions based on breaches of implied warranty of merchantability and implied warranty of fitness for a particular purpose.  *See Gallinari v. Kloth*, 148 F.Supp.3d 202, 215 (D. Conn. 2015) (citing Conn. Gen. Stat. § 42a–2–314 and Conn. Gen. Stat. § 42a–2–315).

Although both warranty of merchantability and warranty of fitness for a particular purpose are generally implied in a contract for the sale of goods between a buyer and a seller,[13] any claim for breach of warranty brought under the CPLA may be successfully asserted "notwithstanding the claimant did not buy the product from or enter into any contractual relationship with the product seller."  *See* Conn. Gen. Stat. § 52–572n(b);  *Rosenthal v. Ford Motor Co., Inc.*, 462 F. Supp. 2d 296, 308 (D. Conn. 2006) (stating that plaintiffs may assert a breach of warranty claim under the CPLA "without a privity relationship"); *see also Garthwait v. Burgio*, 153 Conn. 284, 289 (1965) ("[w]here the liability is fundamentally founded on tort rather than contract there appears no sound reason why the manufacturer should escape liability simply because the injured user, a party in the normal chain of distribution, was not in contractual privity

_____

[13] *See* Conn. Gen. Stat. § 42a-2-314(1); Conn. Gen. Stat. § 42a–2–315.

with it by purchase and sale").

In the instant case, despite the fact that Almost Home purchased its property with the Lennox furnace and the Nidec blower motor already installed as fixtures and had never entered into a contractual relationship with either Defendant, PIIC can assert breach of warranty claims against both Lennox and Nidec under the CPLA. *See* Conn. Gen. Stat. § 52–572n(b); *Rosenthal*, 462 F. Supp. 2d at 308 (allowing the plaintiff's breach of implied warranty claim to proceed, despite the fact that the plaintiff did not enter into a contract with the defendants to purchase the defective product).

"In order to state a claim for breach of the implied warranty of merchantability, a party must plead that: (1) a merchant sold the goods; (2) the goods were defective and not merchantable at the time of sale; (3) injury occurred to the buyer or his property; (4) the injury was caused by the merchant's defective product; and (5) notice was given to the seller of the claimed breach." *Gallinari*, 148 F. Supp. 3d at 215 (internal citations omitted). The goods are not merchantable when, among other things, they are not fit "for the ordinary purposes for which such goods are used" and will not pass in the trade without objections. *See* Conn. Gen. Stat. § 42a-2-314(2); *Walters*, 676 F. Supp. 2d at 55.

Here, PIIC has plausibly alleged that Lennox and Nidec breached an implied warranty of merchantability when they sold the furnace and the blower motor in a defective and not merchantable condition. PIIC alleges that the furnace and the blower motor "were unfit for their ordinary and intended matter purpose" due to their defects. *See* Compl. ¶¶ 13, 14. Because PIIC has plausibly stated a claim against both Defendants for design and manufacturing defects, PIIC has sufficiently established that the furnace and the blower motor were defective and not

merchantable for the purposes of its breach of implied warranty claims. *See McConologue*, 8 F. Supp. 3d at 115 (finding that the plaintiff has sufficiently pled that the product was defective for the purposes of its breach of warranty claim where the plaintiff has sufficiently alleged a separate manufacturing defect claim). Furthermore, PIIC has asserted that it gave notice to both Lennox and Nidec of the defective nature of their products and the injuries caused by their defects. *See id.* ¶¶ 13, 25(o), 28(o). Therefore, PIIC has stated a claim for breach of implied warranty of merchantability against both Defendants.

"To establish a cause of action for breach of the implied warranty of fitness for a particular purpose, a party must establish (1) that the seller had reason to know of the intended purpose and (2) that the buyer actually relied on the seller." *Gallinari*, 148 F. Supp. 3d at 215 (internal citations and quotations omitted).

PIIC has plausibly alleged that Defendants breached an implied warranty of fitness for a particular purpose because Defendants had reason to know of the intended purpose of the furnace and the blower motor, yet failed to design or manufacture these products in a way that would be safe to operate. *See* Compl. ¶ 14. Furthermore, Almost Home alleges that it actually relied on the Defendants, expecting their products to be "free of defects" and "operate in an ordinary and foreseeable manner." *See id.* ¶ 14.

Accordingly, PIIC's breach of implied warranty claims survive Lennox's and Nidec's motions to dismiss.

## C. Leave to Amend the Complaint

The Court now considers whether PIIC should be granted leave to amend its complaint and, once again, replead its negligence and breach of express warranty claims. Defendants

oppose PIIC's request as "unsupported," arguing that PIIC had sufficient opportunity to cure the deficiencies of its complaint following the March 18, 2019 Ruling. *See* Doc. 78, at 2.

A district court should freely grant leave to amend pleadings "when justice requires, absent a substantial reason to deny such leave." *Gulley v. Dzurenda*, 264 F.R.D. 34, 36 (D. Conn. 2010) (citing *Nerney v. Valente & Sons Repair Shop*, 66 F.3d 25, 28 (2d Cir.1995)); *see* Fed. R. Civ. P. 15(a). Although it is often appropriate for a district court, when granting a motion to dismiss, to give the plaintiff leave to amend its complaint,[14] a court may deny such leave "when a party has been given ample prior opportunity to allege a claim." *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 72 (2d Cir. 1996). Accordingly, a court may deny leave to amend if the moving party has repeatedly failed to cure the deficiencies of its complaint by previous amendments. *See Collier v. Aksys Ltd.*, No. 3:04-cv-1232(MRK), 2005 WL 1949868, at *18 (D. Conn. Aug. 15, 2005) (declining to grant the plaintiff leave to replead its securities fraud claims for the fourth time because the plaintiff "ha[d] been given multiple opportunities to amend his complaint and repleading would be unproductive or futile"); *Mooney v. Vitolo*, 435 F.2d 838, 839 (2d Cir. 1970) (finding that "it was within the sound discretion of the District Court to deny leave to replead on the third attempt" after the plaintiffs "were twice given an opportunity to replead").

In the instant case, the Court is not inclined to grant PIIC leave to amend its complaint yet again because doing so would be futile and result in unnecessary motion practice. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to

---

[14] *See Van Buskirk v. The New York Times Co.*, 325 F.3d 87, 91 (2d Cir.2003).

amend.").  Apart from PIIC's three initial amendments to its complaint, PIIC had ample opportunity to cure the deficiencies of its negligence and express warranty claims following the March 18, 2019 Ruling, which thoroughly explained why these claims were inadequately stated and established the pleading expectations for the Fourth Amended Complaint.  *See* 2019 WL 1258918, at **5–6, 7.  PIIC's failure to comply with the careful guidance of the March 18, 2019 Ruling constitutes sufficient ground for this Court to deny PIIC's request to amend its complaint for the fifth time.  *Cf. Armstrong v. McAlpin*, 699 F.2d 79, 93–94 (2d Cir. 1983) (finding that the district court did not abuse its discretion in refusing to give the plaintiffs' another attempt to replead their fraud allegations because the complaint dismissed by the court was the plaintiffs' second amended complaint); *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir. 1982) (noting that there was "no abuse of discretion in the district court's refusal to give plaintiff's attorneys a third attempt to restate the defective allegations" after the Rule 9(b) dismissal).

Accordingly, PIIC's request to amend its complaint is denied.

### III. CONCLUSION

For the foregoing reasons, Lennox's and Nidec's motions to dismiss PIIC's Fourth Amended Complaint (Docs. 69 & 71) are DENIED in part, and GRANTED in part.  PIIC's request to amend its complaint is DENIED.

Dated:      New Haven, Connecticut
            February 12, 2020

                              *   /s/ Charles S. Haight, Jr.*
                              CHARLES S. HAIGHT, JR.
                              Senior United States District Judge